SETTLEMENT AGREEMENT
(Deed in Lieu)


THIS SETTLEMENT AGREEMENT (the "Agreement") is made and dated as of
_____, 2010, among THE PHINEAS GROUP, LLC, a Georgia limited liability
company ("Transferor"), LEO EDWARD GRAY, individually and as Trustee of the Leo Edward
Gray Separate Property Trust, under agreement dated November 24, 1999 for the benefit of Leo
Edward Gray (collectively, "Guarantor"), USAM I FUND, LLC, a Texas limited liability company
("USAM"), and USAM MARVIN, LLC, a California limited liability company, and wholly-owned
subsidiary of USAM ("Transferee").


RECITALS

A.        Pursuant to that certain Balloon Note (Fixed Rate) made by Transferor to USAM
(successor to USA Mortgage Funding, LLC) in the original principal amount of One Million Seven
Hundred Thousand Dollars ($1,700,000) dated as of July 1, 2008 (the "Note"), USAM made a loan
(the "Loan") to Transferor.  The Note and Transferor's obligations thereunder are secured by that
certain Deed of Trust dated as of July 1, 2008 executed by the Trust, as trustor, for the benefit of
USAM (successor to USA Mortgage Funding, LLC), and recorded on July 10, 2008 in the Official
Records of Los Angeles County, California, as Instrument No. 08-1226839 (the "Deed of Trust").
Transferor subsequently acquired the property from the Trust. The Note, the Deed of Trust and all
other documents evidencing the Loan are referred to hereinafter as the "Loan Documents."

B.        The Deed of Trust encumbers (i) the property commonly known as 5403 Blackwelder
Street, Los Angeles, California and more particularly described on Exhibit A attached hereto,
including all Improvements constructed thereon and all Appurtenances thereto (collectively, the
"Blackwelder Land"), and (ii) the property commonly known as 2117 and 2119 South Marvin
Avenue, Los Angeles, California and more particularly described on Exhibit A attached hereto,
including all Improvements constructed thereon and all Appurtenances thereto (collectively, the
"Marvin Land").

C.        The Loan is guaranteed by Guarantor pursuant to the terms and conditions of that
certain Guaranty Agreement dated July 1, 2008 (the "Guaranty").

D.        The Loan has matured and Transferor has informed USAM that it is unable or
unwilling to cure the existing defaults under the Note and USAM is unwilling to extend the maturity
date of the Note.  On October 2, 2009, Transferor filed a voluntary petition under chapter 11 of the
United States Bankruptcy Code in the United States Bankruptcy Court for the Northern District of
Georgia, Atlanta Division (the "Court") in connection with Case No. 09-85858-CRM.  Pursuant to
that certain Amended Plan of Reorganization confirmed by the Honorable Ray Mullins, United
States Bankruptcy Judge on _____, 2010, the Court approved, among other things, (i)
the creation of a new lien in favor of USAM on the Blackwelder Land (which is not addressed in this
Agreement) and (ii) the transfer of the Property to Transferee subject to the terms and conditions of
this Agreement and the exhibits hereto.  The parties desire to resolve the defaults by Transferor
executing and delivering to Transferee a deed to the Property, a bill of sale for the "Personal

Property" (as hereinafter defined) and assignment of certain rights relating thereto and by USAM releasing Transferor and Guarantor from liability under the Note and the Guaranty arising from and after the "Closing Date" (as hereinafter defined), all on the terms and subject to the conditions set forth more particularly in this Agreement.

NOW, THEREFORE, in consideration of the above Recitals which are hereby incorporated into the operative provisions of this Agreement by this reference and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereto hereby further agree as follows:

<u>ARTICLE I</u>

<u>DEFINITIONS</u>

Capitalized terms which are not defined where they first appear shall have the meanings set forth below:

Section 1.01.    "<u>Appurtenances</u>" shall mean all rights, privileges and easements appurtenant to the Marvin Land, including without limitation all minerals, oil, gas and other hydrocarbon substances on or under the Marvin Land, all development rights, air rights, water, water rights and water stock relating to the Marvin Land and any and all easements, streets, alleys and other public ways adjacent to the Marvin Land, and all rights-of-way and other appurtenances used in connection with the beneficial use and enjoyment of the Marvin Land.

Section 1.02.    "<u>Closing</u>" shall mean the closing of the transaction herein contemplated by and among the parties to this Agreement.

Section 1.03.    "<u>Closing Date</u>" shall mean the date of the Closing.

Section 1.04.    "<u>Commitment</u>" shall mean a title commitment covering the Marvin Land (together with legible copies of all exceptions referred to therein) reflecting the Title Company's commitment to issue the corresponding owner's policy of title insurance.

Section 1.05.    "<u>Deed</u>" shall have the meaning set forth in <u>Section 5.02(a)</u> of this Agreement.

Section 1.06.    "<u>Deed of Trust</u>" shall have the meaning set forth in <u>Recital A</u>.

Section 1.07.    "<u>Governmental Authority</u>" shall mean all federal, state, county, municipal, and local governments, administrative agencies, and quasi-governmental authorities having jurisdiction over the Property or any party hereto.

Section 1.08.    "<u>Hazardous Substances</u>" shall mean those materials or substances defined as hazardous or toxic by the Federal Comprehensive Environmental Response Compensation and Liability Act, 42 U.S.C. Section 9601 et seq., the regulations promulgated from time to time thereunder, environmental laws administered by the Environmental Protection Agency or its state

equivalent, and the laws, ordinances, rules or regulations of the State of California, County of Los Angeles, City of Los Angeles, and any other Governmental Authority.

Section 1.09. "Improvements" shall mean all buildings, structures, fixtures and improvements located on the Marvin Land, whether existing or anticipated, and all apparatuses, equipment, and appliances used in connection with the operation or occupancy of the Property, such as heating and air conditioning systems and facilities used to provide any utility services, refrigeration, ventilation, garbage disposal, security, operation, pool equipment, recreation or other services for the Property.

Section 1.10. "Intangible Property" shall mean all contracts relating to or entered into in connection with the Property; all permits, licenses, approvals, guarantees, claims, rights to payment, warranties and all land use entitlements and other intangible property existing in connection with or benefiting the Property.

Section 1.11. "Leases" shall mean all written leases, subleases, licenses, occupancy or use agreements, concessions, and other forms of agreement however denominated, granting to any party or parties the right of use or occupancy of any portion of the Property, whether or not with respect to periodic use or occupancy and all renewals, modifications, amendments, guarantees, and other agreements affecting the same.

Section 1.12. "Legal Requirements" shall mean all laws, ordinances, rules, regulations, and requirements of all Governmental Authorities, including, but not limited to, all zoning, building, land use, and environmental laws, and all orders, rules, and regulations of the insurance carriers for the Property existing at the date of this Agreement or at any time between the date of this Agreement and the Closing Date, applicable to all or any part of the Property, whether or not any such law, ordinance, rule, regulation, or requirement shall necessitate improvements to or shall interfere with the use or enjoyment of all or any part of the Property, and shall also mean and include all requirements of all policies of public liability, fire, and other insurance in force with respect to all or any part of the Property at the date of this Agreement or at any time between the date of this Agreement and the Closing Date.

Section 1.13. "Licenses and Permits" shall mean all certificates of occupancy and all zoning, building, safety and health approvals and all other permits needed for or used in connection with the construction, use, sale or operation of the Property.

Section 1.14. "Loan" shall have the meaning set forth in Recital A of this Agreement.

Section 1.15. "Note" shall have the meaning set forth in Recital A.

Section 1.16. "Permitted Exceptions" shall mean:

        (a)        all liens for real property taxes against the Property;

        (b)        exceptions described on Exhibit B attached hereto; and

(c)     the Deed of Trust.

Section 1.17.    "Personal Property" shall mean all personal property in which Transfer owns or has any interest or right and which is either located on the Marvin Land or in the Improvements and used in connection with the operation or maintenance of the Property, including, but not limited to, the Plans and Specifications.

Section 1.18.    "Plans and Specifications" shall mean the plans and specifications for the Improvements, including "as built" plans and specifications, if applicable.

Section 1.19.    "Policy" shall have the meaning set forth in Section 5.02(g) of this Agreement.

Section 1.20.    "Property" shall mean the Marvin Land, its Intangible Property and the Personal Property.

Section 1.21.    "Release" shall mean the release attached hereto as Exhibit H.

Section 1.22.    "Title Company" shall mean First American Title Insurance Company.

Section 1.23.    "Transferor's Affidavit" shall have the meaning set forth in Section 5.02(d) of this Agreement.

Section 1.24.    "Utility Services" shall mean gas, electric, storm sewer, sanitary sewer, cable television, and telephone.

## ARTICLE II

## PURCHASE OF PROPERTY

Section 2.01.    Agreement to Sell. Subject to the terms and conditions contained in this Agreement, Transferor agrees to sell, assign, convey, and transfer to Transferee all of Transferor's rights, title and interest in and to the Property, and Transferee agrees to purchase the Property. Transferor and Transferee acknowledge and agree that the transfer of title to the Property to Transferee according to the terms of this Agreement is an absolute conveyance of all of Transferor's right, title and interest in and to the Property in fact as well as form and was not and is not now intended as a mortgage, trust conveyance, deed of trust or security interest of any kind; that the consideration for such conveyance is exactly as recited herein, and that Transferor shall have no further interest (including rights of redemption) or claims in and to the Property or to the proceeds and profits which may be derived thereof, of any kind whatsoever.

## ARTICLE III

## CONDITIONS PRECEDENT

Section 3.01.  <u>Delivery Required</u>. The obligations of USAM and Transferee under this Agreement shall be subject to Transferor's delivery of the following documents and materials to USAM or its designated agent, to the extent the specified documents and materials are in the possession or control of Transferor, Guarantor, or the Trust, each in form and substance satisfactory to Transferee and USAM:

(a)    Copies of the most recent surveys of the Property in Transferor's possession, if any;

(b)    To the extent available, copies of the most recent property tax bills for the Property;

(c)    Copies of all Licenses and Permits, soil, seismological, geological, and drainage reports, insurance policies, and all other contracts or documents affecting the Property (or any portion thereof);

(d)    Copies of the Plans and Specifications, if any;

(e)    A schedule of all Personal Property;

(f)    All books and records relating to the Property or the use or operation thereof;

(g)    Copies of all files, agreements and contracts relating to the use, occupancy or operation of the Property or any portion thereof;

(h)    All inspection and test reports (including, without limitation, soils, environmental and building inspection reports) regarding the Property in Transferor's possession or control; and

(i)    Copies of all real estate listing or brokerage agreements entered into in connection with the Property which are in effect as of the date of this Agreement.

Section 3.02.  <u>Additional Conditions Precedent of USAM and Transferee</u>. The obligations of USAM and Transferee under this Agreement shall be subject to the satisfaction of the following conditions:

(a)    Transferee's timely satisfaction of each of its obligations under this Agreement.

(b)    Transferor shall have moved from the Property and shall have removed all of its personal property (excluding the Personal Property) from the Property and the Property shall be in vacuum clean condition, unless occupied by tenants.  Transferor shall, at the request of Transferee, remove from the Property any personal property that Transferee does not wish to have remain at the Property whether or not such personal property constitutes a portion of the Personal Property.

## ARTICLE IV

## COVENANTS OF TRANSFEROR

Section 4.01.   Other Agreements.  Between the date of the execution of this Agreement and the Closing, Transferor covenants and agrees not to:

(a)   enter into any Lease, contract or agreement or incur any obligation pertaining to the Property or any amendment to any existing contract or agreement, without first obtaining the written consent of USAM or Transferee;

(b)   convey or remove any of the Personal Property from the Property or from any other location where now located;

(c)   transfer any interest in or to the Property; or

(d)   encumber the Property for any reason.

## ARTICLE V

## CLOSING

Section 5.01.   Time and Place.  The Closing shall take place through an escrow with Escrow Holder, on or before _____, 2010.

Section 5.02.  Transferor's Obligations.  At the Closing, Transferor shall deliver to Transferee and or USAM all of the following documents, or such other party as the Transferee may direct in writing, each of which must be satisfactory in form and substance to Transferee and its legal counsel, and delivery of which shall be conditions precedent to USAM's and Transferee's obligations under this Agreement:

(a)   A duly executed and acknowledged deed in the form attached hereto as Exhibit C and by this reference made a part hereof (the "Deed").  The Deed shall convey to Transferee fee simple title to the Property, free of any right of redemption or other right or interest of Transferor or anyone claiming through or under Transferor, other than as specifically set forth herein, subject only to the Permitted Exceptions;

(b)   A duly executed Bill of Sale and Assignment in the form attached hereto as Exhibit D conveying title to the Personal Property and the Intangible Property, free and clear of all liens and encumbrances, other than the Permitted Exceptions;

(c)   A duly executed affidavit from Transferor as of the Closing Date, substantially in the form attached hereto as Exhibit E and by this reference made a part hereof (the "Transferor's Affidavit"), stating that:

(i)        Transferor has received fair equivalent value under the terms of this Agreement and the Escrow Instructions; and

(iii)        There are no other unrecorded interests in the Property of any kind;

(d)        A duly executed affidavit of Transferor stating Transferor's United States taxpayer identification numbers and that Transferor is not a foreign person as defined in Internal Revenue Code Section 1445 and any other state-specific forms verifying that Transferee is exempt from withholding taxes in connection with this Agreement, in the form attached hereto as <u>Exhibit F</u>;

(e)        Originals (or copies certified to be true and complete) of all Licenses and Permits in Transferor's possession or control, and shall assist Transferee in a reasonable manner after the Closing to obtain the same;

(f)        A settlement statement prepared by Escrow Holder;

(g)        The Title Company's written agreement to issue the owner's title insurance policy in favor of Transferee (the "Policy") relating to the Property, with liability in amounts acceptable to USAM or Transferee.  The Policy shall be an ALTA owner's form policy with all of the standard exceptions deleted and shall insure Transferee's fee title to the Property free and clear from all liens, easements, rights-of-way and other encumbrances except the Permitted Exceptions. The Policy shall contain a non-merger endorsement and such other endorsements as reasonably requested by Transferee;

(h)        A certificate from the Secretary of State of California dated as of no more than one (1) week prior to the Closing Date, and telephone confirmation from the office of such official on the Closing Date, each indicating that there are no filings against Transferor or the Property in the office of the Secretary of State under the California Uniform Commercial Code which evidence a lien on the Personal Property or the corresponding Intangible Property (other than the Permitted Exceptions);

(i)        A certificate from the Secretary of State of Georgia dated as of no more than one (1) week prior to the Closing Date, and telephone confirmation from the office of such official on the Closing Date, each indicating that there are no filings against Transferor or the Property in the office of the Secretary of State under the Georgia Uniform Commercial Code which evidence a lien on the Personal Property or the corresponding Intangible Property (other than the Permitted Exceptions);

(j)        All other documents affecting title to or possession of the Property and necessary to transfer or assign such title or possession to Transferee, free and clear of all liens, charges and encumbrances not hereinabove specifically excepted;

(k)        A duly executed Release in the form attached hereto as <u>Exhibit H</u>;

(l)        A duly executed Assignment and Assumption of Leases in the form attached hereto as <u>Exhibit L</u>; and

(m)    Such other documents reasonably required to close the transaction contemplated by this Agreement or required by California laws or regulations in connection with the Closing or required by the Title Company.

Section 5.03.    <u>USAM's Obligations</u>.  At the Closing, USAM shall deliver to Transferor:

(a)    A duly executed Release in the form attached hereto as <u>Exhibit H</u>; and

(b)    A duly executed Assignment and Assumption of Leases in the form attached hereto as <u>Exhibit L</u>;

Section 5.04.    <u>Allocations</u>.  Property taxes, assessments, utilities, operating expenses and other charges shall be allocated as follows:

(a)    All real property taxes for Tax Year 2009-2010, and for years prior thereto, shall be the obligations of Tranferor.

(b)    All assessments, special assessments and other like charges and any judgment liens against the Property shall be the sole responsibility of Transferor.

(c)    Transferor shall receive no credit or offset for prepaid water, sewer, utility charges or deposits, or any Licenses and Permits, any prepaid insurance premiums, or any deposits or escrows relating to the Permitted Exceptions.

<u>ARTICLE VI</u>

<u>REPRESENTATIONS AND WARRANTIES</u>

Section 6.01.    <u>Of Transferor</u>.  Transferor hereby warrants and represents the following to USAM and Transferee as of the date of this Agreement, each of which shall be true and correct as of the Closing Date.  Transferor acknowledges that the acquisition by Transferee of the Property will have been made in material reliance by USAM and Transferee on the representations and warranties made in this Agreement, including the following representations and warranties:

(a)    <u>Options</u>.  Transferor has not granted and there are no outstanding options or rights of first refusal to purchase the Property or any portion thereof or any interest therein.

(b)    <u>Occupancy</u>.  The rent roll attached hereto as <u>Exhibit J</u> (the "Rent Roll") reflects all Leases and commitments for occupancy of the Property that will survive the Closing Date.

(c)    <u>Compliance</u>.  To the best of Transferor's knowledge, the Property conforms to and has been operated in accordance with all of the Legal Requirements, and Transferor does not know of any violation of any of the Legal Requirements affecting the Property or any portion thereof.

(d)    Pending Actions; Claims.  Except as described on Exhibit G, no litigation, investigation, or proceeding of any kind is pending or, to Transferor's knowledge, has been threatened against Transferor or the Property.

(e)    Mechanics' Liens.  Transferor has not entered into any contract for work or materials for the Property not heretofore paid which could give rise to a claim for a mechanic's lien under the mechanics' lien law of the State of California, nor has Transferor received any notice of any such claim.

(f)    Expenses.  Except for obligations due USAM as evidenced and secured by the Note and the Deed of Trust, there are no other unpaid expenses incurred in connection with the construction, ownership or maintenance of the Property through the Closing Date except those set forth on Exhibit L attached hereto.

(g)    No Encroachments.  To the best of Transferor's knowledge, all Improvements are located entirely within the boundary lines of the Property.

(h)    Ownership.  There are no persons other than Transferor having any direct or indirect beneficial ownership of any portion of the Property.

(i)    Utility Service.  Transferor is unaware of any threatened or proposed discontinuance of any Utility Services.  All charges for any Utility Services for which Transferor has received invoices have been paid.  All public Utility Services, if any, are provided via public roads or via permanent, irrevocable, appurtenant easements, which shall be conveyed by Transferor to Transferee on the Closing Date.

(j)    Enforceability.  This Agreement and all agreements, instruments, and documents executed by Transferor are legally valid, binding and enforceable upon Transferor.

(k)    No Violation.  Neither the execution of this Agreement nor any agreement, document, or instrument executed or to be executed in connection with the same, nor anything provided in or contemplated by this Agreement or any such other agreement, document, or instrument, nor the use or occupation of the Property (or any portion thereof), does now or shall hereafter invalidate, cancel, make inoperative, materially interfere with or result in the acceleration of maturity of any contract, agreement, mortgage, deed of trust, promissory note, lease, easement, right, or interest relating to the Property (or any portion thereof) to which Transferor is a party or by which Transferor or the Property is bound.  The conveyance of the Property pursuant hereto will not violate any of the Legal Requirements. The conveyance of the Property will not violate Transferor's articles of organization or operating agreement.

(l)    Public Improvements.  To the best knowledge of Transferor, no public improvements are currently pending which would result in any charge or special assessments being levied against the Property (or any portion thereof).

(m)    <u>Books and Records</u>.  All books, records, financial information, and other written information and data relating to the Property, or any part thereof, which have been or which are hereafter furnished to USAM or Transferee by Transferor are true, accurate, and complete in all material respects.

(n)    <u>No Misrepresentation</u>.  Transferor knows of no facts nor has Transferor failed to disclose any fact which would prevent Transferee from using and operating the Property after the Closing in the normal manner in which similar Property in the area are used and operated.

(o)    <u>Condemnation</u>.  No condemnation or eminent domain proceedings or any other actions, suits or proceedings are pending or, to the best knowledge of Transferor, threatened against or affecting the Property.

(p)    <u>No Default</u>. Transferor is not subject to or in default with respect to any order, writ, injunction, decree or demand of any court or other Governmental Authority relating to or arising from the Property.

(q)    <u>Consideration</u>.  This Agreement is entered into without force or duress, of the free will of Transferor, and in consideration of the receipt by Transferor or Guarantor of reasonably equivalent value considering the respective values of the outstanding indebtedness and the Property and the transfer of all right, title and interest in and control over to the Property to Transferee is fair, just and equitable. Transferor has consulted with its counsel regarding the transaction contemplated by this Agreement. The decision of Transferor to enter into this Agreement is a fully informed decision, and Transferor is aware of all legal and other ramifications of such decision.

(r)    <u>The Loan</u>. Transferor acknowledges that:

(i)    The Loan has matured and has not been repaid by Transferor and there has been a material default by Transferor under the Note;

(ii)    USAM has informed Transferor and Guarantor that it is the present owner and holder of the Note, the beneficial interest under the Deed of Trust, and the beneficial interest under the Guaranty; and

(iii)    USAM has declared the Note and all indebtedness evidenced thereby and secured by the Deed of Trust to be due and payable.

(s)    <u>No Redemption</u>.  Transferor acknowledges that upon conveyance of the Property to Transferee, neither Transferor, nor anyone claiming under Transferor, shall have any right of redemption in or any other right to the Property and will be estopped from asserting any claim to or right of redemption against the Property.

(t)    <u>Hazardous Substances</u>.  No Hazardous Substances are known to be located on the Property.

(u)    <u>Contracts</u>.  Except as set forth in the Rent Rolls, no Leases, contracts, agreements, instruments, arrangements or understandings are in existence that affect the Property and would be biding on Transferee after the Closing Date.

(v)    <u>Licenses</u>.  To the extent in Transferor's possession or control, Transferor has delivered to USAM true and complete copies of all Licenses and Permits necessary to the continued use and occupancy of the Property, all of which items are in full force and effect, and shall assist Transferee in a reasonable manner after the Closing to obtain the same.

(w)    <u>Encumbrances</u>.  Except for the Permitted Exceptions, there are no existing or, proposed, easements, covenants, restrictions, or other agreements, whether written or oral, which may affect the value of or use of the Property.

(x)    <u>Personal Property</u>.  Transferor is the owner of all the Personal Property and the Intangible Property free and clear of any liens or encumbrances, and all of the Personal Property and Intangible Property used in the construction, use, operation or maintenance of the Property is located at the Property.

(y)    <u>Enforceability</u>.  This Agreement and all agreements and documents executed by Transferor in connection herewith have been duly authorized by all necessary corporate action and are valid, binding and enforceable upon Transferor.

The truth and correctness of all of the foregoing representations and warranties shall be a condition precedent to any obligation of Transferee to purchase the Property, which condition is intended solely for the benefit of USAM and Transferee, and USAM or Transferee shall have the right at their sole election to waive any such condition and proceed with the purchase or, in the alternative, to terminate this Agreement.  Transferor's representations and warranties shall survive the Closing and the delivery of the deed and transfer of the Property by Transferor.

Section 6.02.  <u>Of USAM and Transferee</u>.  USAM and Transferee jointly and severally hereby warrant and represent the following to Transferor, each of which is true and correct as of the Closing Date.  USAM and Transferee acknowledge that the execution of this Agreement by Transferor has been made and the sale by Transferor of the Property will have been made in material reliance by Transferor on such representations and warranties:

(a)    <u>Enforceability</u>.  This Agreement and all agreements and documents executed by USAM and Transferee in connection herewith have been duly authorized by all necessary corporate action and are valid, binding and enforceable upon USAM and/or Transferee, as applicable.

(b)    <u>Consideration</u>.  Each of USAM and Transferee has consulted with its counsel regarding the transaction contemplated by this Agreement.  The decision of USAM and Transferee to enter into this Agreement is a fully informed decision, and USAM and Transferee are aware of all legal and other ramifications of such decision.

(c)    <u>Note and Deed of Trust</u>.  USAM is the present owner and holder of the Note, the beneficial interest under the Deed of Trust, and the beneficial interest under the Guaranty.

The truth and correctness of all of the foregoing representations and warranties shall be a condition precedent to any obligation of Transferor to sell the Property, which condition is intended solely for the benefit of Transferor, and Transferor shall have the right in its sole election to waive any such condition and proceed with the sale or, in the alternative, to terminate this Agreement.

## ARTICLE VII

## OBLIGATIONS TO THIRD PARTIES

It is expressly understood and agreed that Transferee is not assuming the obligations or liabilities incurred by Transferor in the use, operation, service or maintenance of the Property. Transferor acknowledges and agrees that neither USAM nor Transferee assumes, or agrees to discharge, any liabilities pertaining to Transferor, the Guarantor, or the Property except as expressly stated herein.  No person not a party to this Agreement shall have any "third party beneficiary" or other rights hereunder, except for the members of Transferor, who are expressly beneficiaries of the Agreement.

## ARTICLE VIII

## MISCELLANEOUS

Section 8.01.   <u>Time of the Essence</u>.  Time is of the essence for this Agreement.

Section 8.02.   <u>Possession</u>.  Possession of the Property shall be delivered to Transferee on the Closing Date.

Section 8.03.   <u>Brokerage Commissions</u>.  Each party hereto warrants and represents that neither party has incurred any liability for the payment of any brokerage fee or commission in connection with the transaction contemplated herein.  If either of the parties breach the foregoing warranty and representation, it shall indemnify the other party and hold the other party harmless from and against any damage, liability, loss, claim, or expense, including reasonable attorneys' fees suffered by the other party as a result of such breach.

Section 8.04.   <u>Fees and Expenses</u>.  Transferee shall pay all escrow fees, recording fees, documentary transfer taxes and all premiums and charges of the Title Company.

Section 8.05.   <u>Rights and Remedies Reserved</u>.  The Release shall not preclude Transferor, USAM or Transferee from bringing suit or pursuing any other remedy against any of them for breach of any of the representations, warranties and covenants in this Agreement.  Said Release shall not preclude, and Transferor, Guarantor, USAM and Transferee expressly reserve the right to bring, any suit or any other remedy of Transferor, Guarantor, USAM or Transferee for any claim against parties other than (i) the parties to this Agreement and (ii) the parties that are released under any of the Release (to the extent that the claims have been released pursuant to the Release).  USAM

specifically reserves the right to bring and to maintain foreclosure proceedings against the Property (or any portion thereof).

      Section 8.06.  <u>Notices</u>.  All notices, requests and demands to be made hereunder to the parties hereto shall be in writing (at the address set forth below) by any of the following means: (a) personal service (including service by overnight courier service); (b) facsimile (if confirmed in writing sent by personal service or certified, first class mail, return receipt requested); or (c) certified, first class mail, return receipt requested.  Such addresses may be changed by notice to the other parties given in the same manner as provided above.  Any notice, demand or request sent pursuant to either subsection (a) or (b) hereof shall be deemed received upon such personal service or upon delivery by facsimile, and, if sent pursuant to subsection (c) shall be deemed received three (3) days following deposit in the mail:

| | |
|---|---|
| If to USAM: | USAM I Fund, LLC<br>1310 RR 620 South C-15<br>Austin, TX 78734<br>Attn.: Jack Lieberman<br>Fax: (512) 617-9401 |
| With a copy to: | Nevers, Palazzo, Maddux & Packard PLC<br>31248 Oak Crest Drive, Suite 100<br>Westlake Village, CA 91361<br>Attn.: Lee D. Mackay, Esq.<br>Fax: (818) 879-9680 |
| If to Transferee: | USAM Marvin, LLC<br>1310 RR 620 South C-15<br>Austin, Texas 78734<br>Attn.: Jack Lieberman<br>Fax: (512) 617-9401 |
| With a copy to: | Nevers, Palazzo, Maddux & Packard PLC<br>31248 Oak Crest Drive, Suite 100<br>Westlake Village, CA 91361<br>Attn.: Lee D. Mackay, Esq.<br>Fax: (818) 879-9680 |
| If to Borrower: | The Phineas Group, LLC<br>5000 Snapfinger Woods Drive, Suite B301<br>Decatur, GA 30035-4055<br>Attn.: Leo E. Gray<br>Fax: _____ |
| With a copy to: | Giddens & Mitchell, P.C.<br>5000 Snapfinger Woods Drive, Suite B300<br>Decatur, Georgia 30035-4055 |

Attn.: Bobby L. Giddens, Esq.
Fax: (770) 987-7138

If to Guarantor and/or Trust:

Leo Edward Gray Separate Property Trust
5000 Snapfinger Woods Drive, Suite B301
Decatur, Georgia 30035-4055
Attn.: Leo E. Gray, Trustee
Fax: _____

With a copy to:      Giddens & Mitchell, P.C.
5000 Snapfinger Woods Drive, Suite B300
Decatur, Georgia 30035-4055
Attn.: Bobby L. Giddens, Esq.
Fax: (770) 987-7138

or to such other address as either party may from time to time specify in writing to the other.

Section 8.07.   Successors and Assigns.  This Agreement shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors, heirs, administrators and assigns. USAM or Transferee, at their option, may assign this Agreement to any other party or parties.

Section 8.08.   Amendments and Termination.  This Agreement may be amended, modified or terminated only by a written instrument executed by the parties.

Section 8.09.   Survival.  All agreements, representations and warranties by the respective parties contained in or made in writing pursuant to this Agreement shall be deemed to be material, and shall survive the Closing Date unless expressly stated otherwise in the Agreement.  All statements contained in any certificate or other instrument delivered at the Closing by Transferor to USAM or Transferee in connection with the transactions contemplated by this Agreement shall constitute representations and warranties hereunder.

Section 8.10.   GOVERNING LAW.  THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OR THE STATE OF CALIFORNIA WITHOUT GIVING EFFECT TO THE CONFLICT OF LAW PRINCIPLES OF SAID STATE.

Section 8.11.   Merger of Prior Agreements.  This Agreement supersedes all prior agreements and understandings between the parties hereto relating to the subject matter hereof.  The parties do not intend to confer any benefit on any person, firm, or corporation other than the parties to this Agreement, except as and to the extent otherwise expressly provided herein.

Section 8.12.   Enforcement.  In the event any party hereto fails to perform any of its obligations under this Agreement or in the event a dispute arises concerning the meaning or interpretation of any provision of this Agreement, the defaulting party or the party not prevailing in such dispute, as the case may be, shall pay any and all costs and expenses incurred by the other

parties in enforcing or establishing its rights hereunder, including, without limitation, court costs and reasonable attorneys' fees.

Section 8.13.  Captions; Pronouns; Joint and Several Use of Certain Terms.  The section titles or captions in this Agreement are for convenience only and shall not be deemed to be part of this Agreement.  All pronouns and any variations of pronouns shall be deemed to refer to the masculine, feminine, or neuter, singular or plural, as the identity of the parties may require. Whenever the terms referred to herein are singular, the same shall be deemed to mean the plural, as the context indicates, and vice versa.

Section 8.14.  Waivers.  No right under this Agreement may be waived, except by written instrument executed by the party who is waiving such right.  No waiver of any breach of any provision contained in this Agreement shall be deemed a waiver of any preceding or succeeding breach of that provision or of any other provision contained in this Agreement.  No extension of time for performance of any obligations or acts shall he deemed an extension of the time for performance of any other obligations or acts.

Section 8.15.  Severability.  If any term, covenant, condition, or provision of this Agreement or the application thereof to any person or circumstance shall, at any time or to any extent, be invalid or unenforceable, the remainder of this Agreement, or the application of such term or provision to persons or circumstances other than those to which it is held invalid or unenforceable, shall not be affected thereby, and each provision of this Agreement shall be valid and shall be enforced to the fullest extent permitted by law.

Section 8.16.  Further Assistance.  The parties agree at any time and from time to time to execute any and all documents reasonably requested by the other to carry out the intent of this Agreement.

Section 8.17.  No Merger.

(a)     The release of Transferor from personal liability pursuant to the Release, shall not affect the Loan, Note and Deed of Trust or the indebtedness evidenced and secured thereby (the "Indebtedness").  The Indebtedness shall remain in full force and effect after Closing, subject to the terms hereof.  The interest of USAM or Transferee in the Property upon effectuation of the transfers, assignments or conveyances as provided in of this Agreement shall not merge with the interest of USAM pursuant to the Loan, the Note, the Deed of Trust or the Indebtedness.  It is the express intention of each of the parties hereto, and all transfers, assignments or conveyances as provided in this Agreement shall, to the extent required by USAM, so recite, that such interest of USAM or Transferee in the Property shall not merge, but shall be and remain at all times separate and distinct, notwithstanding any unity or commonality of interest in USAM or Transferee, or their officers, directors, members, managers, shareholders, parents, subsidiaries, or affiliates, and the Deed of Trust shall be and remain at all times valid and continuous liens on their respective portions of the Property subject only to such written and recorded release(s) thereof as USAM may, in its sole and absolute discretion, so execute hereinafter.

(b)      Notwithstanding anything to the contrary in this Agreement or the Release, if and to the extent that any transfer of assets agreed upon herein between Transferor and Transferee is later determined to have been a voidable preferential transfer, a fraudulent transfer or a fraudulent conveyance, under either state or Federal law, and as a result thereof either (x) additional consideration for the transfer and any additional amounts of fees, expenses, interest or other affirmative damages (the "Additional Payments") become due and owing to the estate from USAM or Transferee, or (y) the transfer must be undone and all or a portion of the assets must be returned to the estate for any reason whatsoever, then notwithstanding the Release:

(i)      any and all rights and/or obligations owed to USAM and any and all remedies available to USAM under the terms of the Note, the Deed of Trust, the Guaranty, or in law or equity against Transferor, Guarantor and/or the Property shall be automatically revived and reinstated, to the extent of any Additional Payments paid by USAM or Transferee;

(ii)      any and all rights and obligations of and any and all remedies or defenses available to Transferor under the terms of the Note, the Deed of Trust, the Guaranty, or in law or equity (other than or provided in the Release), shall be automatically revived and reinstated; and

(iii)      USAM shall be entitled to file a proof of claim against the estate to recover either: (1) the amount of the Additional Payments, or (2) if the transfer has been undone and the assets returned in whole or in part to the estate, the value of the consideration paid to or received by Transferor for the initial asset transfer (including the amount for which Transferor was released pursuant to the Release in connection with such asset transfer), plus any deferred interest from the date of the disgorgement to the date of distribution to USAM in any bankruptcy, insolvency, receivership or fraudulent conveyance or fraudulent transfer proceeding and any costs and expenses due and owing.  The parties acknowledge and agree that the provisions in this Section 8.17(b) shall be independent of the indemnification obligations contained in Section 8.18 of this Agreement.

(c)      The provisions of this Section 8.17 shall survive the Closing.

Section 8.18.    Indemnification.

(a)      Transferor hereby indemnifies USAM and Transferee from any and all claims, suits, demands, losses, liabilities, expenses, damages, penalties and costs (including, without limitation, attorneys' fees and disbursements) arising from:

(i)      any claim against USAM or Transferee by any private person or entity or Governmental Authority for the violation of any laws or ordinances resulting from Hazardous Substances existing on the Property at any time prior to the Closing Date;

(ii)      any personal injury or property damage tort claim resulting from Hazardous Substances existing on the Property at any time prior to the Closing Date;

(iii)      the removal, clean up or mitigation of any Hazardous Substance existing on the Property at any time prior to the Closing Date; and

(v)	any breach of any representation or warranty of Transferor or Guarantor contained herein, or any breach or default by Transferor or Guarantor under any of the covenants or agreements in this Agreement.

(b)	Transferee hereby agrees to indemnify Transferor from any and all claims, suits, demands, losses, liabilities, expenses, damages, penalties and costs (including, without limitation, attorneys' fees and disbursements) arising from an initial release of Hazardous Substances that occurs on the Property after the Closing Date.

Section 8.19.	Counterparts.  This Agreement may be executed by the parties in any number of counterparts each of which shall be deemed an original, but all such counterparts together shall constitute but one agreement.

Section 8.20.	Conveyance to USAM.  At the election of USAM, Transferor shall make all of the conveyances and transfers contemplated by this Agreement directly to USAM instead of to Transferee.

*[Signatures appear on following page.]*

IN WITNESS WHEREOF, the parties hereto have executed this Agreement, as of the day and year first above written.


TRANSFEROR:                          THE PHINEAS GROUP, LLC
                                     a Georgia limited liability company


                                     By: _____
                                     Name: Leo E. Gray
                                     Its:  Authorized Member


GUARANTOR:                           _____
                                     LEO E. GRAY, individually and as Trustee of
                                     the Leo Edward Gray Separate Property Trust,
                                     under agreement dated November 24, 1999 for
                                     the benefit of Leo Edward Gray


[*Signatures continue on following page.*]

USAM:                               USAM I FUND, LLC,
                                    a Texas limited liability company


                                    By: _____
                                    Name: Jack Lieberman
                                    Its: President


TRANSFEREE:                         USAM MARVIN, LLC,
                                    a California limited liability company

                                    By:    USAM I Fund, LLC,
                                           a Texas limited liability company,
                                           its sole member and manager

                                           By: _____
                                               Jack Lieberman, President

EXHIBIT A

LEGAL DESCRIPTION

Blackwelder Land

Real property in the City of Los Angeles, County of Los Angeles, State of California, described as follows:

THE EAST HALF OF LOT 341 AND ALL OF LOT 342 OF DU RAY PLACE TRACT, AS PER MAP RECORDED IN BOOK 21, PAGES 50 AND 51 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: 5043-016-012

Marvin Land

Real property in the City of Los Angeles, County of Los Angeles, State of California, described as follows:

LOT 128, OF TRACT NO. 5770, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 62 PAGES 7 AND 8 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: 5064-017-016

Together with:

1.      Any easements appurtenant to the above-described real property which will be described with more particularity after a current preliminary title report with respect to said real property is received and reviewed by Transferee and USAM.

2.      Any other real property rights owned by Transferor and related to the use and enjoyment of the above-described real property which will be described with more particularity after a current preliminary title report with respect to said real property is received and reviewed by Transferee and USAM.

EXHIBIT B

PERMITTED EXCEPTIONS

1.      Those certain exceptions and exclusions numbered 1 and 3 through 6 on that certain Preliminary Title Report issued by First American Title Insurance Company in connection with Order Number 3340697, dated as of February 19, 2010, 2010.

EXHIBIT C

FORM OF DEED

DOCUMENT PREPARED BY AND
RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

Nevers, Palazzo, Maddux & Packard PLC
31248 Oak Crest Drive, Suite 100
Westlake Village, California 91361
Attn.: Lee D. Mackay, Esq.

MAIL TAX STATEMENTS TO:
USAM Marvin, LLC
1310 RR 620 South C-15
Austin, Texas 78734
Attn.: Jack Lieberman

Tax Assessor's Parcel No.: 5064-017-016

GRANT DEED

    The undersigned grantor declares that the amount of Documentary transfer tax is Zero
Dollars ($0), computed on full value of property conveyed less value of liens and encumbrances
remaining at time of sale. The property conveyed herein is located in Los Angeles County,
California.

    FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, THE
PHINEAS GROUP, LLC, a Georgia limited liability company ("Grantor"), hereby GRANTS to
USAM Marvin, LLC, a California limited liability company ("Grantee"), that certain real property
located in the County of Los Angeles, State of California and more particularly described in Exhibit
A attached hereto and by this reference incorporated herein (the "Property"), together with all
improvements located thereon and all rights, privileges, easements and appurtenances of Grantor
appertaining to the Property and all right, title and interest of Grantor in, to and under adjoining
streets, rights of way and easements.

    This Grant Deed is an absolute conveyance, the Grantor having sold the Property to Grantee
pursuant to the "Settlement Agreement" (as defined below), which provides for, among other things,
the delivery of good and valuable consideration exchanged between Grantor and USAM I FUND,
LLC, a Texas limited liability company ("USAM").  Except for the releases provided for in the
Settlement Agreement, the conveyance contemplated herein shall not affect that certain Deed of
Trust dated as of July 1, 2008 executed by Guarantor and assumed by Grantor, as trustor, for the
benefit of USAM (successor to USA Mortgage Funding, LLC), and recorded on July 10, 2008 in the

Official Records of Los Angeles County, California, as Instrument No. 08-1226839, or the obligations secured by the Deed of Trust, as modified (the "Indebtedness").

The Indebtedness shall remain in full force and effect after the date hereof. The interest of Grantee and USAM in the Property upon effectuation of the transfers, assignments or conveyances as provided in this Grant Deed shall not merge with the interest of USAM pursuant to the Deed of Trust or the Indebtedness, but shall be and remain at all times separate and distinct, notwithstanding any unity or commonality of interest in Grantee or USAM, or their officers, directors, shareholders, members, managers, parents, subsidiaries or affiliates, and the Deed of Trust shall be and remain at all times a valid and continuous lien on the Property subject only to such written and recorded release(s) or reconveyances thereof as USAM may, in its sole and absolute discretion, so execute hereinafter.

Grantor declares that this conveyance is freely and fairly made, that this is an absolute conveyance (and not a conveyance for security purposes), and that there are no agreements, oral or written, between Grantor and Grantee with respect to the real property described in Exhibit A to this Grant Deed, except for (a) this Grant Deed, and (b) that certain unrecorded Settlement Agreement dated as of _____, 2010 (the "Settlement Agreement").

IN WITNESS WHEREOF, Grantor has caused this grant deed to be executed as of the date hereinafter written.

DATED: _____, 2010

GRANTOR:                          THE PHINEAS GROUP, LLC
                                  a Georgia limited liability company

                                  By: _____
                                  Name: Leo E. Gray
                                  Its:  Authorized Member

[*This Signature Must Be Acknowledged*]

<u>EXHIBIT A TO GRANT DEED</u>

<u>LEGAL DESCRIPTION OP THE PROPERTY</u>

Real property in the City of Los Angeles, County of Los Angeles, State of California, described as follows:

LOT 128, OF TRACT NO. 5770, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 62 PAGES 7 AND 8 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: 5064-017-016

Together with:

1.    Any easements appurtenant to the above-described real property which will be described with more particularity after a current preliminary title report with respect to said real property is received and reviewed by Transferee and USAM.

2.    Any other real property rights owned by Transferor and related to the use and enjoyment of the above-described real property which will be described with more particularity after a current preliminary title report with respect to said real property is received and reviewed by Transferee and USAM.

<u>EXHIBIT D</u>

<u>FORM BILL OF SALE AND ASSIGNMENT</u>

THIS BILL OF SALE AND ASSIGNMENT is executed as of _____, 2010, by THE Phineas Group, LLC, a Georgia limited liability company ("Transferor"), in favor of USAM Marvin, LLC, a California limited liability company ("Transferee"), and pursuant to that certain Settlement Agreement (Deed in Lieu) dated as of _____, 2010, among Transferor, Leo E. Gray, an individual, Transferee, and USAM I Fund, LLC, a Texas limited liability company ("USAM") (the" Settlement Agreement").

FOR VALUE RECEIVED, receipt of which is hereby acknowledged, Transferor does hereby grant, bargain, sell, convey, assign, transfer and set over unto Transferee, absolutely and not as security, all of the Personal Property and all of the Intangible Property (each as defined in the Settlement Agreement), whether now existing or hereafter arising, acquired or created, including, without limitation the following:

1.    All fixtures, furniture, equipment, furnishings, and other personal property owned by Transferor or in which Transferor has any interest or rights which relate in any way to the use of that certain real property in the County of Los Angeles, State of California, which real property is more particularly described on <u>Exhibit A</u> attached hereto (the "Property") and/or the construction of improvements on the Property (the "Project") or the financing thereof wherever the same may be located, on the Property or otherwise;

2.    All utility deposits made (and any refunds thereof) and any and all other funds deposited as security for the fulfillment of any of the obligations of Transferor in connection with the Property and the Project;

3.    All deposits and bonds of Transferor relating to the Property and the Project, including, without limitation, deposits and bonds provided to any governmental agency for completion of the Project or with respect to any utility services;

4.    All plans and specifications, contracts and agreements, working drawings, and reports of any kind, character, or description prepared for use in connection with the Property and the Project;

5.    All warranties of manufacturers, vendors, contractors and subcontractors relating to the construction, development or work performed or to be performed in connection with the Property and the Project;

6.    All licenses, concessions, and other forms of agreement or contracts, however denominated with respect to the Property or the Project, and all renewals, modifications, amendments, guarantees, and other agreements affecting the same;

7.    All permits, authorizations, approvals, licenses, contracts, applications and agreements, of every kind and nature, relating to the Property and the Project; and

8.      All claims, rights to payment and similar rights with respect to the Property.

Transferor hereby represents and warrants to Transferee that Transferor is the absolute owner of the Personal Property and the Intangible Property, that the Personal Property and the Intangible Property are free and clear of all liens, charges and encumbrances, and that Transferor has full right, power and authority to sell the Personal Property and the Intangible Property and to make this Bill of Sale and Assignment.

IN WITNESS WHEREOF, Transferor has executed this Bill of Sale and Assignment as of the day and year first above written.

"Transferor"                                    THE PHINEAS GROUP, LLC
                                                a Georgia limited liability company

                                                By: _____
                                                Name: Leo E. Gray
                                                Its:  Authorized Member

<u>EXHIBIT A TO FORM BILL OF SALE AND ASSIGNMENT</u>

<u>LEGAL DESCRIPTION OF PROPERTY</u>

That certain real property located in the City of Los Angeles, County of Los Angeles, State of California more particularly described as follows:

Real property in the City of Los Angeles, County of Los Angeles, State of California, described as follows:

LOT 128, OF TRACT NO. 5770, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 62 PAGES 7 AND 8 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: 5064-017-016

Together with:

1.      Any easements appurtenant to the above-described real property which will be described with more particularity after a current preliminary title report with respect to said real property is received and reviewed by Transferee and USAM.

2.      Any other real property rights owned by Transferor and related to the use and enjoyment of the above-described real property which will be described with more particularity after a current preliminary title report with respect to said real property is received and reviewed by Transferee and USAM.

<u>EXHIBIT E</u>

<u>FORM OF TRANSFEROR'S AFFIDAVIT</u>

The undersigned, _____, in his capacity as manager of THE PHINEAS GROUP, LLC, a Georgia limited liability company (The "Company"), duly states:

That Company has made, executed and delivered that certain grant deed to USAM Marvin, LLC, a California limited liability company (the "Transferee"), dated _____, 2010 conveying that certain real property described in <u>Exhibit A</u> attached hereto (the "Premises");

That the aforesaid grant deed is intended to be and is an absolute conveyance of the title to the Premises to the grantee named therein, and was not and is not now intended as a mortgage, trust conveyance, or security of any kind; that it was the intention of the undersigned as grantor in said grant deed to convey, and by said grant deed the undersigned did convey to the grantee therein, all its right, title and interest absolutely in and to the Premises; that possession of the Premises has been surrendered to the grantee;

That in the execution and delivery of said grant deed the undersigned was not acting under any misapprehension as to the effect thereof, and acted freely and voluntarily and was not acting under coercion or duress;

That the consideration for said grant deed was and is the full release of the undersigned of all liability for the debts, obligations, costs, and charges secured by that certain Deed of Trust (the "Deed of Trust") recorded against the Premises executed by the undersigned, (successor to original Trustor), to USAM I Fund, LLC, a Texas limited liability company (the "USAM") (successor to USA Mortgage Funding, LLC), as Beneficiary, dated as of July 1, 2008 and recorded on July 10, 2008 as Instrument No. 08-1226839 in the Official Records of Los Angeles County, California; and that at the time of making said grant deed the undersigned believed and now believes that the aforesaid consideration therefor represents the fair value of the Premises;

There are no unrecorded interests in the Premises of any kind; and

This affidavit is made for the protection and benefit of the grantee in said grant deed, its successors and assigns, and all other parties hereafter dealing with or who may acquire an interest in the property herein described, and particularly for the benefit of First American Title Insurance Company which has insured the title to the Premises in reliance thereon, and any other title company which may hereafter insure the title to the Premises; and

That the undersigned will testify, declare, depose or certify before any competent tribunal, officer, or person, in any case now pending or which may hereafter be instituted, to the truth of the particular facts hereinabove set forth.

*[Signature appears on following page.]*

_____

By:_____

In his capacity as Manger of the Company

[*Signature Must Be Acknowledged*]

<u>EXHIBIT A TO TRANSFEROR'S AFFIDAVIT</u>

<u>LEGAL DESCRIPTION OF PREMISES</u>

Real property in the City of Los Angeles, County of Los Angeles, State of California, described as follows:

LOT 128, OF TRACT NO. 5770, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 62 PAGES 7 AND 8 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: 5064-017-016

Together with:

1.    Any easements appurtenant to the above-described real property which will be described with more particularity after a current preliminary title report with respect to said real property is received and reviewed by Transferee and USAM.

2.    Any other real property rights owned by Transferor and related to the use and enjoyment of the above-described real property which will be described with more particularity after a current preliminary title report with respect to said real property is received and reviewed by Transferee and USAM.

EXHIBIT F

FIRPTA AFFIDAVIT

(Non-Foreign Affidavit Pursuant to FIRPTA)

The undersigned, _____, in his capacity as manager of THE PHINEAS GROUP, LLC, a Georgia limited liability company ("Seller"), hereby certifies the following:

1.      Seller is the owner of that certain real property located in the County of Los Angeles, State of California, more particularly described on Exhibit A attached hereto (the "Property").

2.      Seller is not a foreign corporation, foreign partnership, foreign trust or foreign estate, as such terms are defined in Section 1445 of the Internal Revenue Code of 1986, as amended (the "Code"):

3.      Seller's U.S. employer identification number is: _____.

4.      Seller's address is _____.

5.      This Affidavit is provided pursuant to Section 1445 of the Code which requires a transferee of a U.S. real property interest to withhold tax if the transferor is a foreign person. Seller understands that the purchaser of the Property intends to rely on this affidavit in connection with the United States Foreign Investment and Real Property Tax Act (FIRPTA).

In accordance with Sections 18662 and 18668 of the California Revenue and Taxation Code, if a seller of California real property does not certify as to an exemption by completing a Form 593-C, Real Estate Withholding Certificate (the "Form 593-C Certificate"), 3 1/3% of the sales price of the California real property conveyed must be withheld and forwarded to the Franchise Tax Board unless the sales price of the property is less than $100,000.

Transferor understands that the Form 593-C Certificate may be disclosed to the Franchise Tax Board of California and that any false statement contained therein could be punished by fine, imprisonment or both.

The Transferor understands that USAM and Transferee are relying on this Certification and the Form 593-C Certificate to be submitted by Transferor in determining whether withholding is required upon said transfer.

The undersigned hereby declares, under penalty of perjury, that the foregoing is true and correct.

*[Signature appears on following page.]*

Dated: _____, 2010          THE PHINEAS GROUP, LLC
                                         a Georgia limited liability company


                                         By: _____
                                         Name: Leo E. Gray
                                         Its:  Authorized Member

## EXHIBIT G

### LIST OF ACTIONS: SUITS AND PROCEEDINGS

1.      None.

<u>EXHIBIT H</u>

<u>FORM MUTUAL AND GENERAL RELEASE AGREEMENT</u>

This Mutual and General Release Agreement (the "Release") is hereby entered into by and between USAM I Fund, LLC, a Texas limited liability company, and USAM Marvin, LLC, a California limited liability company, on the one hand, and The Phineas Group, LLC, a Georgia limited liability company, and Leo E. Gray, an individual, on the other hand, in connection with the "Settlement Agreement" (as that term is defined below).

1.    <u>Definitions</u>.  For the purposes of this Release, the following definitions shall apply:

(a)    <u>Settlement Agreement</u>.  That certain Settlement Agreement (Deed in Lieu) dated as of _____, 2010 by and among the "Phineas Parties" (as defined below), and the "USAM Parties" (as defined below) shall be referred to as the "Settlement Agreement."

(b)    <u>USAM Parties</u>.  USAM I Fund, LLC, a Texas limited liability company, its predecessors in interest in the Note and Loan Documents, and USAM Marvin, LLC, a California limited liability company, shall be referred to collectively as the "USAM Parties."

(c)    <u>Phineas Parties</u>.  The Phineas Group, LLC, a Georgia limited liability company, Leo E. Gray, individually and as trustee of the of the Leo Edward Gray Separate Property Trust, under agreement dated November 24, 1999 for the benefit of Leo Edward Gray, and each of their members, managers, successors and assigns, shall be referred to collectively as the "Phineas Parties."

(d)    Any term not defined herein shall have the meaning set forth in the Settlement Agreement.

2.    <u>Releases</u>.

(a)    <u>General Release by the USAM Parties</u>.  The USAM Parties, and each of them, together with their current and former agents, employees, representatives, administrators, attorneys, insurers, lenders, members, managers, shareholders, officers, directors, divisions, insiders, affiliates, partnerships, partners, joint venturers, direct or indirect parent and/or subsidiary entities, assigns, heirs, predecessors-in-interest and successors-in-interest, and each of them, in respect of the mutual promises and other consideration recited in the Settlement Agreement, do hereby fully and forever release, relieve, waive, relinquish and discharge, jointly and severally, the Phineas Parties, and each of them, together with its property, and its current and former agents, employees, representatives, administrators, attorneys, insurers, lenders, members, managers, shareholders, officers, directors, divisions, insiders, affiliates, partnerships, partners, joint venturers, direct or indirect parent and/or subsidiary entities, heirs, assigns, predecessors-in-interest and successors-in-interest (collectively, the "Phineas Released Parties"), and each of them, of and from any and all manner of actions, causes of action, suits, proceedings, liens, debts, liabilities, obligations, costs, expenses, sums of money, controversies, accounts, dues, fines, penalties, damages, claims, judgments, executions and demands of every nature, kind and description whatsoever, whether known or unknown, either by law, in equity, or otherwise, wherever or whenever brought, which have arisen, may arise from, be

connected with, or in any way related to that loan (the "Loan") and the corresponding "Loan Documents" described with more particularity in the Recitals of the Settlement Agreement, as well as any action or inaction of any person or entity released hereunder with respect to the Loan, any and all guaranties of the indebtedness evidenced thereby and/or any and all collateral security for such indebtedness (collectively, the "Loan Related Claims").  Notwithstanding the foregoing, the Loan Related Claims shall not include any claims brought at any time in connection with the use of, ownership of, or construction activities on, the Property that preceded the date the Deed is recorded in the Official Records of Los Angeles County, California (the "Official Records").

(b)    General Release by the Phineas Parties.  The Phineas Parties, and each of them, together with their current and former agents, employees, representatives, administrators, attorneys, insurers, lenders, members, managers, shareholders, officers, directors, divisions, insiders, affiliates, partnerships, partners, joint venturers, direct or indirect parent and/or subsidiary entities, assigns, heirs, predecessors-in-interest and successors-in-interest, and each of them, in respect of the mutual promises and other consideration recited in the Settlement Agreement, do hereby fully and forever release, relieve, waive, relinquish and discharge, jointly and severally, the USAM Parties, and each of them, together with its property, and its current and former agents, employees, representatives, administrators, attorneys, insurers, lenders, members, managers, shareholders, officers, directors, divisions, insiders, affiliates, partnerships, partners, joint venturers, direct or indirect parent and/or subsidiary entities, heirs, assigns, predecessors-in-interest and successors-in-interest (collectively, the "USAM Released Parties"), and each of them, of and from any and all Loan Related Claims.  Notwithstanding the foregoing, the Loan Related Claims shall not include any claims brought at any time in connection with the use of, ownership of, or construction activities on, the Property that preceded the date the Deed is recorded in the Official Records.

3.    Waiver.  To the greatest extent possible, each party hereto hereby expressly waives its rights under Section 1542 of the California Civil Code, which provides as follows:

A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Each party acknowledges that it is aware that it may later discover facts in addition to or different from those which it now knows or believes to be true with respect to the subject matter of this Release, but that it intends hereby fully, finally and forever to settle and release all such matters, known or unknown, suspected or unsuspected, which now exist, may now exist or previously existed between it and the entities or individuals granted releases.  In furtherance of such intention, the releases given here shall be in, and shall remain in, effect as a full and complete release, notwithstanding the discovery or existence of any such additional or different facts.

4.    Ownership of Claims.  The USAM Parties, and each of them, represent and warrant that they have not sold, assigned, pledged or hypothecated, in whole or in part, any claims they may have against the Phineas Released Parties, or any of them, and that USAM owns the Note, the beneficial interest under the Deed of Trust, and the beneficial interest under the Guaranty.  The Phineas Parties, and each of them, represent and warrant that they have not sold, assigned, pledged

or hypothecated, in whole or in part, any claims they may have against the USAM Released Parties, or any of them.

5.      Independent Investigation.  Each party hereto represents that it has undertaken its own diligent independent investigation into all relevant facts, has been advised by its counsel with respect to all relevant legal issues and is not relying on the representations of any other party, with respect to any factual or legal issue related to this Release.

6.      Governing Law.  This Release shall be governed by the laws of the State of California.

7.      Further Assurances; Cooperation.  Each party to this Release agrees to cooperate in a timely manner with the other parties to carry out the purpose and effect of this Release including, without limitation, execution, notarization, and delivery of such other and further instruments, documents and writings as may reasonably be requested to effectuate the terms and conditions of this Release.

8.      Authority.  By signing below, each signatory represents that he has been duly authorized to enter into this Release on behalf of the party for whom he is purporting to sign.

9.      Entire Agreement.  Except for the Settlement Agreement, this Release replaces all prior agreements between the parties and constitutes the entire agreement among the parties with respect to the subject matter hereof. Any further agreement shall be in writing and signed by the parties affected by said agreement.

10.     Titles and Headings.  Titles and headings of sections of this Release are for convenience of reference only and shall not affect the construction of any provision of this Release.

11.     Partial Invalidity.  Any provision of this Release which is found to be invalid or unenforceable by any court in any jurisdiction shall, as to that jurisdiction, be ineffective to the extent of such invalidity or unenforceability, and the invalidity or unenforceability of such provision shall not affect the validity or enforceability of the remaining provisions hereof.

12.     Attorneys' Fees.  Each party agrees to bear its own attorneys' fees and costs in connection with this Release; provided, however, that in the event that any party takes legal action with respect to the enforcement of this Release, the prevailing party shall recover its costs, fees and expenses related to such action including, without limitation, attorneys' fees.

13.     Binding on Successors.  This Release is binding on the parties and their heirs, successors and assigns.

14.     Counterparts.  This Release may be executed in any number of counterparts. All of such counterparts together shall constitute one document at such time as the counterparts are executed, which document shall, in total, contain the signatures of all the parties hereto.

15.    <u>Interpretation of Agreement</u>.  This Release was drafted jointly by the parties. Should any dispute arise concerning the meaning or construction of any term or terms of this Release, no part or term of this Release shall be construed for or against either as the drafting party.

Dated:  _____, 2010

THE PHINEAS GROUP, LLC
a Georgia limited liability company

By: _____
Name: Leo E. Gray
Its:  Authorized Member

_____
LEO E. GRAY, an individual

_____
LEO E. GRAY, individually and as Trustee of the LEO EDWARD GRAY SEPARATE PROPERTY TRUST, Under Agreement Dated November 24, 1999 for the benefit of Leo Edward Gray

[*Signatures continue on following page.*]

USAM I FUND, LLC,
a Texas limited liability company


By: _____
Name: Jack Lieberman
Its: President


USAM MARVIN, LLC,
a California limited liability company

By:    USAM I Fund, LLC,
       a Texas limited liability company,
       its sole member and manager

       By: _____
           Jack Lieberman, President

<u>EXHIBIT I</u>

<u>FORM JOINT TITLE AND ESCROW INSTRUCTIONS</u>

JOINT TITLE AND ESCROW INSTRUCTIONS

_____, 2010

***<u>Via E-mail to mhooks@firstam.com</u>***

First American Title Insurance Company
11175 Azusa Court
Rancho Cucamonga, CA  91730
Attention: Matt Hooks

>    ***Re:***    ***Settlement Agreement (Deed in Lieu)***
>    ***2117 and 2119 South Marvin Ave., Los Angeles, California ("Property")***
>    ***Title/Escrow No. _____***

Dear Mr. Hooks:

This agreement ("Agreement") will constitute your instructions with respect to the "Documents" described below in connection with the transfer of the Property in lieu of foreclosure, as more particularly described in the Settlement Agreement (Deed in Lieu) dated as of _____, 2010 (the "Settlement Agreement"), among USAM I Fund, LLC, a Texas limited liability company ("USAM"), USAM Marvin, LLC, a California limited liability company ("Transferee"), The Phineas Group, LLC, a Georgia limited liability company ("Transferor"), and Leo E. Gray, an individual ("Guarantor").  Capitalized terms not defined herein shall have the meaning set forth in the Settlement Agreement.

On or before the close of business on, _____, 2010 (the "Closing Date"), each of the following conditions precedent to the closing of Escrow shall be satisfied:

    1.    <u>Delivery of Documents</u>.

        (a)    <u>Documents to Be Recorded</u>.  On or before the Closing Date, Transferor shall deliver or cause to be delivered an original, executed and acknowledged Grant Deed dated as of _____, 2010, executed by Transferor (the "Grant Deed") with respect to the Property.

        (b)    <u>Delivery of Other Documents</u>.  On or before the Closing Date, at least four (4) fully executed originals of the following documents (the "Non-Recordation Documents," and together with the Grant Deed, collectively, the "Documents") shall have been delivered to you, all in

form approved by a "USAM Closing Representative", and a "Phineas Closing Representative" (as those terms are defined in Paragraph 3 below):

         (i)      The Settlement Agreement, executed by USAM, Transferee, Transferor, and Guarantor;

         (ii)     Bill of Sale and Assignment dated as of _____, 2010, executed by Transferor ("Bill of Sale");

         (iii)    Transferor's Affidavit dated _____, 2010, executed and acknowledged by _____ in his capacity as Manager of Transferor ("Affidavit");

         (iv)    FIRPTA Affidavit dated as of _____, 2010, executed by _____ in his capacity as manager of Transferor ("FIRPTA Affidavit"); and

         (v)     Mutual and General Release Agreement dated as of _____, 2010, executed by USAM, Transferee, Guarantor, and Transferor (the "Release").

     2.     <u>Intentionally Omitted</u>.

     3.     <u>Conditions to Close of Escrow</u>.  The Documents shall not be recorded or delivered to any person or entity until each of the following conditions is satisfied:

         (a)     You have received the Documents and you are unconditionally and irrevocably prepared to cause to be recorded the Grant Deed in accordance with Paragraph 4 below.

         (b)     First American Title Insurance Company ("Title Company") is unconditionally and irrevocably prepared to issue to Transferee an ALTA Form 2006 Standard Coverage title policy in the form of the Proforma policy attached hereto as <u>Exhibit A</u> issued in connection with Order No. 3440697 (South Marvin) (the "Owner's Title Policy"), effective as of the Closing Date, and including the following endorsements: _____.

         (c)     Title Company is unconditionally and irrevocably prepared to issue CLTA Form Endorsement 107.11 (Non-Merger After Lender Acquires Title) (the "107.11 Endorsement") in connection with that certain lender's policy of title insurance issued by Title Company in connection with Order No. 330467 (Blackwelder) (the "Lender's Title Policy").

         (d)    YOU HAVE RECEIVED CONFIRMATION FROM EITHER LEE D. MACKAY, ESQ. OF NEVERS, PALAZZO, MADDUX & PACKARD [(___) _____] OR JACK LIEBERMAN OF USAM AND TRANSFEREE [(___) _____] (A "**USAM CLOSING REPRESENTATIVE**") THAT ALL OF USAM'S AND TRANSFEREE'S CONDITIONS TO CLOSING HAVE BEEN FULFILLED OR WAIVED TO THE SATISFACTION OF USAM AND TRANSFEREE, AND THAT THE DOCUMENTS HAVE BEEN DELIVERED TO ESCROW IN FORM APPROVED BY USAM AND TRANSFEREE.

(e)    YOU HAVE RECEIVED CONFIRMATION FROM _____ ESQ. [(___) _____] (A "**TRANSFEROR CLOSING REPRESENTATIVE"**), THAT THE DOCUMENTS HAVE BEEN DELIVERED TO ESCROW IN FORM APPROVED BY TRANSFEROR AND GUARANTOR.

(f)    You have been able to fully comply with all other terms and conditions of the Settlement Agreement.

4.    <u>Close of Escrow</u>.  If the conditions specified in Paragraph 3 above are satisfied on the Closing Date, then you shall immediately notify any USAM Closing Representative, and the Transferor Closing Representative of such satisfaction by telephone, which confirmation shall evidence your agreement to immediately take or cause to be taken the actions hereinafter specified, and thereafter you shall immediately:

(a)    Cause the Title Company to record the Grant Deed in the Official Records.

(b)    Cause Title Company to issue the Owner's Title Policy and deliver the same to Lee D. Mackay, Esq. of Nevers, Palazzo, Maddux & Packard PLC, at 31248 Oak Crest Drive, Suite 100, Westlake Village, California 91361, promptly following the Closing.

(c)    Cause Title Company to issue the 107.11 Endorsement to the Lender's Title Policy and deliver the same to Lee D. Mackay, Esq. at the address above promptly following the Closing.

5.    <u>Delivery of Documents</u>.  As soon as they are available, please deliver the Documents as follows:

(a)    To USAM c/o Lee D. Mackay, Esq. of Nevers, Palazzo, Maddux & Packard PLC, at 31248 Oak Crest Drive, Suite 100, Westlake Village, California 91361:

(i)    a conformed copy of the Grant Deed; and

(ii)    one (1) original of each of the Non-Recordable Documents.

(b)    To Transferee c/o Lee D. Mackay, Esq. of Nevers, Palazzo, Maddux & Packard PLC, at 31248 Oak Crest Drive, Suite 100, Westlake Village, California 91361:

(i)    the original of the recorded Grant Deed;

(ii)    a conformed copy of the Grant Deed; and

(iii)    one (1) original of each of the Non-Recordable Documents.

(c)    To Transferor and Guarantor c/o Bobby L. Giddens, Esq. at 5000 Snapfinger Woods Drive, Suite B300, Decatur, Georgia 30035-4055:

        (i)      a conformed copy of the Grant Deed; and

        (ii)     two (2) originals of each of the Non-Recordable Documents.

6.     <u>Closing Costs</u>.  All fees and expenses payable under the Settlement Agreement or hereunder including, without limitation, all Escrow and Title Company charges, and all other closing costs shall be paid by USAM.

7.     <u>Cancellation of Instructions</u>.  Notwithstanding anything to the contrary herein, if the conditions specified in Paragraph 3 hereof are not satisfied on or before the Closing Date, then you shall not proceed with the transaction unless and until you receive further written instructions from a USAM Closing Representative.  If Transferor instructs you to cancel this escrow, the instructions set forth in Paragraphs 1 through 5 shall be deemed canceled and you shall immediately return each of the Documents to the party depositing same.

Please acknowledge your acceptance and agreement to act in accordance with this Agreement by signing where indicated below and returning a copy of the same to each of the undersigned parties as indicated.  In any event your distribution of the Release and/or recordation of the Grant Deed shall be deemed your agreement to act in accordance herewith.

*[Signatures appear on following page.]*

USAM:

c/o Nevers, Palazzo, Maddux & Packard PLC
31248 Oak Crest Drive, Suite 100
Westlake Village, CA 91361
Attn.: Lee D. Mackay, Esq.
Fax: (818) 879-9680

Transferee:

c/o Nevers, Palazzo, Maddux & Packard PLC
31248 Oak Crest Drive, Suite 100
Westlake Village, CA 91361
Attn.: Lee D. Mackay, Esq.
Fax: (818) 879-9680

USAM I FUND, LLC,
a Texas limited liability company

By: _____
Name: Jack Lieberman
Its: President

USAM MARVIN, LLC,
a California limited liability company

By:    USAM I Fund, LLC,
       a Texas limited liability company,
       its sole member and manager

       By: _____
           Jack Lieberman, President

[*Signatures continue on following page.*]

Transferor:

Giddens & Mitchell, P.C.
5000 Snapfinger Woods Drive, Suite B300
Decatur, Georgia 30035-4055
Attn.: Bobby L. Giddens, Esq.
Fax: (770) 987-7138

Guarantor:

Giddens & Mitchell, P.C.
5000 Snapfinger Woods Drive, Suite B300
Decatur, Georgia 30035-4055
Attn.: Bobby L. Giddens, Esq.
Fax: (770) 987-7138

THE PHINEAS GROUP, LLC
a Georgia limited liability company

By: _____
Name: Leo E. Gray
Its:  Authorized Member

_____
LEO E. GRAY, an individual

ACKNOWLEDGED AND AGREED:

FIRST AMERICAN TITLE INSURANCE COMPANY

By: _____
       Matt Hooks, Title Officer and
       Authorized Signatory

<u>EXHIBIT J</u>

<u>RENT ROLL FOR THE PROPERTY</u>

[*Attach*]

<u>EXHIBIT K</u>

<u>SCHEDULE OF UNPAID EXPENSES INCURRED IN CONNECTION WITH THE
OWNERSHIP AND MAINTENANCE OF THE PROPERTY</u>

[*Attach*]

<u>EXHIBIT L</u>

<u>ASSIGNMENT AND ASSUMPTION OF LEASES</u>

This Assignment and Assumption of Leases (the "Assignment") is made as of _____, 2010 (the "Effective Date") by and between Leo E. Gray, individually and as Trustee of the Leo Edward Gray Separate Property Trust, under agreement dated November 24, 1999 for the benefit of Leo Edward Gray ("Gray"), and The Phineas Group, LLC, a Georgia limited liability company ("Phineas," and together with Gray, collectively, "Assignor") and _____, a _____ ("Assignee"), based on the following facts and circumstances:

A.      Assignor executed the lease agreements set forth on <u>Exhibit A</u> to this Agreement (each a "Lease," and collectively, the "Leases"), in its capacity as lessor.  Pursuant to the Leases, certain premises commonly known as 2117 and 2119 South Marvin Avenue, Los Angeles, California (the "Premises") were leased from Assignor to Lessees, for the terms described in the Leases.  All capitalized terms not otherwise defined herein shall have the meanings set forth in the Leases.

B.      Assignor desires to assign its rights under the Leases to Assignee and Assignee desires to assume the obligations of Assignor under the Leases.

NOW, THEREFORE, Assignor and Assignee agree as follows:

1.      <u>Assignment</u>.  For value received, Assignor hereby assigns and transfers to Assignee, as of the Effective Date all of its right, title, and interest in and to the Leases, including any security deposits thereunder, if any.

2.      <u>Assumption</u>.   Assignee hereby agrees to and does accept the assignment of Assignor's rights under the Leases, and, in addition, expressly assumes and agrees to keep, perform and fulfill, effective on and after the Effective Date, all of the terms, covenants, conditions and obligations required to be kept, performed and fulfilled by Assignor under the terms of the Leases arising on or after the Effective Date.

3.      <u>Counterparts</u>.  This Assignment may be executed in counterparts, each of whom shall be deemed an original, and both of which together shall constitute one and the same instrument.

4.      <u>Miscellaneous</u>.  This Assignment shall be binding on the parties and their respective successors and assigns.  The heading to sections of this Assignment are for convenient reference only and shall not be used interpreting this Assignment.

5.      <u>Attorney's Fees</u>.  If any action or proceeding is commenced by either party to enforce its rights under this Assignment, the prevailing party in such action or proceeding shall be entitled to recover all reasonable costs and expenses incurred in such action or proceeding, including reasonable attorneys' fees and costs, in addition to any other relief awarded by the court.

6.      <u>No Prior Assignment</u>.  Assignor warrants and represents to Assignee that Assignor has not assigned its interest in the Leases to any person or entity other than the Assignee.

IN WITNESS WHEREOF, Assignor and Assignee have caused this Assignment to be executed as of the Effective Date.

ASSIGNOR:

_____

LEO E. GRAY, individually and as
Trustee of the Leo Edward Gray Separate
Property Trust, under agreement dated
November 24, 1999 for the benefit of
Leo Edward Gray

THE PHINEAS GROUP, LLC
a Georgia limited liability company

By: _____
Name: Leo E. Gray
Its:  Authorized Member

ASSIGNEE:

USAM MARVIN, LLC,
a California limited liability company

By:    USAM I Fund, LLC,
       a Texas limited liability company,
       its sole member and manager

       By: _____
           Jack Lieberman, President

EXHIBIT A TO ASSIGNMENT AND ASSUMPTION OF LEASES

Schedule of Leases

[*Attach*]